IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:

**Jacqueline B. Owens**,

18421 Stonecreek Drive
Hazel Crest, IL 60429
SSN xxx-xx-5541

Debtor

Case No. 17-27731

Judge Carol A. Doyle

Chapter 13

Trustee – Tom Vaughn

---

**Jacqueline B. Owens**,

    Plaintiff,

v.

**CitiMortgage, Inc**. and **Nationstar Mortgage**, LLC

    Defendants.

Adversary proceeding no.

17 A _____

### COMPLAINT FOR SPECIFIC PERFORMANCE AND DAMAGES

#### Preliminary Statement

1. This is a complaint for specific performance of defendants' promise and duty to provide plaintiff with a permanent loan modification when plaintiff met the conditions set forth in a trial period plan under the Home Affordable Modification Program. Plaintiff also seeks damages for breach of contract, promissory estoppel, and violation of the Illinois Consumer Fraud Act.

#### Jurisdiction, Venue, and Standing

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 in that this action arises in and relates to the bankruptcy case, *In re Jacqueline B.*

*Owens,* case no 17-B-27731, filed on September 15, 2017, and presently pending before this Court. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (C) and (O).

3. If this case is not a core proceeding, it is a related proceeding as described in 28 U.S.C. § 157(c)(1).

4. Venue is proper in this district under 28 U.S.C. § 1409(a).

## Parties

5. Debtor/Plaintiff, Jacqueline B. Owens ("Owens"), who is the debtor in this case, is an individual residing at 18421 Stonecreek Drive in Hazel Crest, Illinois.

6. Defendant, CitiMortgage, Inc. ("CitiMortgage"), is a mortgage loan servicer and a New York corporation. Its registered agent in Illinois is C T Corporation System, located at 208 South LaSalle Street, Suite 814 in Chicago, Illinois.

7. Defendant, Nationstar Mortgage, LLC ("Nationstar"), is a Delaware corporation that services home mortgages in Illinois as well as other states. Nationstar's registered agent in Illinois is Illinois Corporation Service, located at 801 Adlai Stevenson Drive in Springfield, Illinois.

8. CitiMortgage offered the Debtor the loan modification at issue in this adversary proceeding.

9. CitiMortgage subsequently sold or transferred the mortgage, without modifying it, to co-Defendant Nationstar.

## Statement of Facts

10. Jacqueline Owens is 64-year old African American woman.

11. Ms. Owens bought her home, located at 18421 Stonecreek Drive in Hazel Crest, Illinois

in 2005 for $243,000 with a Freddie Mac mortgage. The current estimated value based on the most recently sold homes in her development is $150,000 at most.

12. Ms. Owens received her Bachelor's Degree from Mundelein College in Business Administration in 1982. She subsequently obtained a Masters in Business Administration (MBA) from Loyola University in 1999 in Chicago.

13. When she bought the home she was employed as an Information Technology project manager at Chicago Board of Trade earning over $100,000 annually. Her monthly payments were $1,599.04.

14. Before the Board of Trade she worked at a number of other finance institutions.

15. In 2007, after nine years of employment, Chicago Board of Trade merged with Chicago Mercantile Exchange in 2007 and Ms. Owens was laid off.

16. Ms. Owens was unable to find other employment because many other companies were conducting layoffs at the time. Things only worsened the following year in the recession triggered by the foreclosure-crisis.

17. Ms. Owens drained her 401(k) and her savings to stay current on her mortgage and other necessary expenses thinking she would regain comparable employment at some point before she ran out of funds.

18. By 2010 she ran out of savings. She was repeatedly turned away from prospective employment because she did not have Project Management Professional certification ("PMP"). She obtained a voucher to take classes and passed the required test and became certified.

19. After she received the PMP certification, employers began to tell her she had been unemployed for too long so they would not offer her a job.

20. She found a temporary income consulting as an independent contractor and kept up with her mortgage payments.

21. While she was still current with her mortgage, Ms. Owens realized she would soon fall behind on her mortgage. She proactively applied for and obtained assistance from the Illinois Hardest Hit fund in September 2013.

22. As part of the response to the 2008 foreclosure crisis, the Federal government created and funded the Hardest Hit Fund in 2010. In Illinois, the program is administered by the Illinois Housing and Development Authority ("IHDA"). The Illinois Hardest Hit program pays up to $35,000 to bring Illinois homeowners current on already-defaulted mortgages or to keep them current over a period of time after a loss of income.

23. Hardest Hit kept Ms. Owens current on her mortgage through April 2015.

24. Ms. Owens also applied for early Social Security Retirement and her payments started in July 2015 but her mortgage payment comprised 85% of her monthly Social Security income. She began to fall behind on her mortgage payments.

25. In 2015, Ms. Owens finally found a job at National Able Network, a non-profit organization that promotes workforce development. She is a career coach for seniors who are trying to become employed or increase their employment. Her salary is around $43,000 annually.

26. Realizing she still could not afford the monthly mortgage payment and would lose her house after she exhausted Hardest Hit funds, Ms. Owens applied for a HAMP ("Home Affordable Modification Program") loan modification with CitiMortgage, her then-mortgage servicer, in August 2015. Her application is dated August 3, 2015.

27. In response to the 2008 financial crisis, Congress created the HAMP Program as part of

the Troubled Asset Relief Program (TARP) in 2008. The enacting statute required the Secretary of Treasury to, *inter alia*, "implement a plan that seeks to maximize assistance for homeowners and…encourage the servicers of the underlying mortgages…to take advantage of…available programs to minimize foreclosures." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) (quoting 12 U.S.C. § 5219(a)) (reversing the District Court's dismissal of Plaintiff Homeowner's complaint for breach of contract, promissory estoppel, fraudulent representation, and for violation of ICFA when the Defendant denied Plaintiff's HAMP Application).

28. CitiMortgage granted Ms. Owens' application and offered her a Trial Payment Plan ("TPP") in a letter dated January 14, 2016. *Exhibit A*, January 14, 2016 TPP Offer.

29. Under the terms of the TPP – which was drafted by CitiMortgage -  if Ms. Owens (a) accepted the TPP offer before 1/28/16 by phone or mail, (b) made three monthly payments $1262.39 starting 2/1/2016, and (c), "and continue[d] to meet all program requirements, you **will** receive a modification…." (emphasis added) *Exhibit A*, January 2016 TPP, pp. 1, 3.

30. Ms. Owens accepted the TPP offer before 1/28/16 and made the first three TPP payments of $1262.39 on January 27, February 26, and March 28, 2016. When she did not receive a final modification loan documents she continued to pay the TPP amount for April, May, and June 2016.

31. CitiMortgage accepted the TPP payments described above from Ms. Owens.

32. CitiMortgage did not inform Ms. Owens that she was not complying with any program requirements.

33. Ms. Owens did comply with all of the HAMP modification program requirements for

completing the TPP.

34. Alternatively, CitiMortgage subsequently waived any defects in acceptance by sending Ms. Owens a Final Modification Agreement.

35. In or around the first week of July 2016 Ms. Owens received a Final Loan Modification Agreement, dated June 29, 2016 at her house in Hazel Crest, Illinois. The Agreement states that her final modified payment would be $1301.19 per month starting August 2016. *Exhibit B*, June 29 Final Loan Modification Agreement.

36. Ms. Owens was ill for around a week in early July 2016. When she recovered, she reviewed the documents and noticed that CitiMortgage had increased their escrow estimate, which increased her payment amount.

37. The TPP and Modified payment amounts include funds to cover principal and interest and the estimated cost of property taxes and homeowner's insurance. The bank is permitted to adjust the escrow amount periodically to match actual tax and insurance costs so the total mortgage payment sometimes fluctuates.

38. Ms. Owens took one copy of the Final Modification to work with her, leaving the rest of the packet CitiMortgage mailed to her at home. She works in Chicago, Illinois. Her intent was to try and resolve the increased escrow issue on the phone during the work day when her CitiMortgage contact was available.

39. The Final Modification Agreement asks Ms. Owens to mail two signed copies of the Final Modification back to CitiMortgage in "an enclosed pre-paid envelope" by July 13, 2016.

40. The Final Modification Agreement also said, "[I]f you do not send both signed copies of the Modification Agreement by the above date, you must contact us if you still wish to be

considered for this program and have your loan modified."

41. On or before July 13, 2016, Ms. Owens contacted the CitiMortgage loan modification agent she had been dealing with throughout the loan modification process to dispute the escrow re-calculation. The calculation in the final modification resulted in an increase in her monthly payments from the TPP amount of $1262.39 to $1301.19.

42. The CitiMortgage agent's name was Margaret Allen. Ms. Allen was the designated case manager Ms. Owens worked with from the initial application process all the way through the final loan modification process.

43. Despite Ms. Owens' repeated calls and multiple conversations CitiMortgage did not resolve or explain the escrow discrepancy by the due date of July 13, 2016.

44. Finally, in a phone call with Ms. Allen on July 27, 2016, Ms. Owens again disputed the escrow amount and asked Margaret Allen what to do since the due date had passed.

45. Ms. Allen told Ms. Owens to go ahead and mail in the Final Loan Modification Agreement "immediately" and CitiMortgage would recalculate the escrow if the actual costs for her taxes or insurance costs were different from their estimate.

46. Relying on Ms. Allen's instruction, Ms. Owens immediately signed the document and mistakenly dated it "7-27-17" instead of "7-27-16." She mailed the documents to CitiMortgage that same day, USPS First Class, with her return address on the envelope to an address CitiMortgage listed on the face of the Final Loan Modification Agreement, CitiMortgage, Inc., P.O. Box 78015, Phoenix, AZ 85062-8015.

47. USPS did not return the mail to Ms. Owens undelivered.

48. Ms. Owens called Ms. Allen several times after she mailed the final loan modification documents in to determine the status of the modification. Ms. Allen repeatedly told Ms.

    Owens that CitiMortgage was still looking for the documents.

49. Ms. Owen made the first two post-final modification payments of $1301.19 for July and August 2016 on August 1 and August 30, 2016. Both payments were timely.

50. CitiMortgage accepted the July and August 2016 payments of $1301.19 each.

51. CitiMortgage did not return the July and August payments of $1301.19 to Ms. Owens.

52. Ms. Owen subsequently received a mortgage statement from CitiMortgage that did not reflect the final loan modification or the modified balance or new payment amount.

53. In or around August or September 2016, Ms. Owens called CitiMortgage to dispute the incorrect statement and was told her (modification) account was closed.

54. In September 2016 CitiMortgage sent Ms. Owens a new TPP offer with a payment amount of $1307.90.

55. Ms. Owens called Ms. Allen to inquire about the Final Modification Agreement she mailed on July 27, 2016. Ms. Allen told Ms. Owens they were still looking for the documents.

56. Frustrated with CitiMortgage's failure to locate the loan modification documents and the fact that it did not seem like CitiMortgage had modified the loan or was applying her payments to her account, Ms. Owens stopped making payments starting in September 2016 and started to save the payments instead.

57. Ms. Owens assumed CitiMortgage had re-issued a new TPP by mistake.

58. On December 7, 2016, CitiMortgage filed a foreclosure action against Ms. Owens in Cook County, Illinois. The Case number is 2016-CH-15830. The caption is CitiMortgage, Inc v. Jacqueline B. Owens, et al.

59. The Final Loan Modification Agreement was not attached to the foreclosure complaint or

referenced in the foreclosure complaint.

60. The foreclosure case sought to enforce the unmodified mortgage.

61. Defendants have assessed late fees and costs against Ms. Owens that she would not owe had CitiMortgage modified her mortgage.

62. Ms. Owens' credit rating has suffered because of the delinquent and default notations as well as Defendants' foreclosure filing against her.

63. Because of Defendants' unlawful actions Ms. Owens lost the opportunity to secure a HAMP modification and take advantage of the HAMP interest incentives for the first 5 years of her modification. *Exhibit A*, January 2016 TPP, p. 3.

64. Ms. Owens would not have needed to file this Chapter 13 Bankruptcy if not for Defendants' foreclosure on the unmodified mortgage. The bankruptcy has and will negatively affect her credit rating for the next 10 years.

65. Had CitiMortgage simply defaulted Ms. Owens in 2016 instead of leading her to believe they would modify her mortgage if she completed the TPP, Ms. Owens could have researched other options she might have to save her home or cut her losses.

66. Had CitiMortgage confirmed that Ms. Owens' mortgage had been modified or explained to her in a timely manner that she would need to send in the documents again, she would have continued making her timely payments, and taken the appropriate actions to obtain a modification, and CitiMortgage would not have needed to file a foreclosure.

67. If CitiMortgage wrongly denied Ms. Owens a final modification, Ms. Owens may enforce the terms of the modified mortgage against Nationstar to the same extent that she could against CitiMortgage.

68. The United States Department of Treasury is winding down the HAMP program. The last

date homeowners could apply for a HAMP modification was December 31, 2016. Ms. Owens can no longer submit a new application due to Defendants' actions.

69. CitiMortgage's behavior shows a scheme to defraud deserving homeowners who qualify for HAMP modifications from obtaining a final modification.

70. The behavior evidencing the scheme includes: failing to issue final modification offers until months after the homeowners has successfully completed the TPP; the short deadlines - issuing letters and giving two-week deadlines (including mailing time) for customers to respond; not providing electronic ways of submitting documents like fax or e-mail, failing to provide clear guidance to borrowers so that they can remedy any mistakes in a timely manner; issuing a new TPP instead of a new final modification agreement when the previous final modification was purportedly not received before the arbitrarily short deadline; and accepting TPP and Final Modification payments with no intention of actually modifying the loan before transferring servicing rights to Nationstar.

### Count I: Breach of Contract

71. Plaintiff repeats and re-alleges paragraphs 1-70 above if fully set forth herein.

72. This count is pled against CitiMortgage and Nationstar.

73. Defendant CitiMortgage breached its promise to Ms. Owens to permanently modify the mortgage according to the guidelines of the HAMP program if she fulfilled her part of the contract by making the three trial period plan payments.

74. The guidelines for the HAMP program provide that if a borrower is offered a trial modification agreement, accepts the offer, and makes the payments under the trial modification agreement for 3 months, then the servicer **shall** offer the borrower a permanent loan modification.

> Once the Borrower successfully completes the Trial Period and all final amounts that must be capitalized are known, the Servicer **will** prepare and process a Modification Agreement. (emphasis added)

Bulletin 2009-6, page C65-18, *HAMP Servicing Requirements for Federal Home Loan Mortgage Corporation* ("Freddie Mac") *insured mortgages*

75. The June TPP was a valid offer containing definite and certain terms as described in paragraphs 28-29 above.

76. Ms. Owens accepted the offer and fully performed as described in paragraph 29-34.

77. Offer and acceptance were supported by consideration as described in paragraphs 29-34.

78. CitiMortgage breached the agreement by failing to permanently modify the mortgage.

79. CitiMortgage breached the agreement by conveying servicing rights to Nationstar without modifying the mortgage.

80. CitiMortgage's breach damaged Ms. Owens in that CitiMortgage did not modify her mortgage or timely inform her that they had rejected the modification so that she could re-apply or re-send the necessary documents. As a result of CitiMortgage's breach, Ms. Owens is in danger of losing her home as she cannot afford the un-modified payment amount.

81. Ms. Owens can afford the modified mortgage amount and has proposed a payment schedule that cures her default if the Court enforces the July 2016 Final Loan Modification Agreement.

82. Defendant's breach can be remedied by requiring Defendant Nationstar, as successor-in-interest, of CitiMortgage to specifically perform the contract by permanently modifying the mortgage under the terms of the July 2016 Final Loan Modification Agreement.

83. The monetary damages that Ms. Owens will suffer if specific performance is not ordered

exceed $100,000.

WHEREFORE, plaintiff prays that the Court enter judgment in her favor:

A. On Count I, requiring defendants CitiMortgage and Nationstar to permanently modify her mortgage in accordance with the Final Modification agreement or HAMP guidelines whichever is more favorable to Ms. Owens;

B. For the retroactive and prospective difference between the cost to her of paying a mortgage as modified according to HAMP guidelines (approximately $1301.19) and the payments required under an unmodified mortgage (approximately $1561.45 to $1599.04)

C. In the alternative, award her damages of not less than $100,000;

D. For the decrease in the equity of the her interest in the property;

E. For the damages to her credit rating; and

F. Granting such other, further and different relief as may be just and proper.

### Count II: Promissory Estoppel

84. Plaintiff repeats and re-alleges paragraphs 1-83 above as if fully set forth herein.

85. This count is pled against CitiMortgage and Nationstar.

86. Defendant CitiMortgage promised Ms. Owens that if she complied with the terms of the TPP by making the trial payments set for the therein, she would receive an offer for a permanent loan modification in accordance with HAMP guidelines.

87. CitiMortgage's promise was intended to induce Ms. Owens to rely upon it, to make monthly trial modifications payments, and to forego other possible courses of action.

88. Ms. Owens relied on CitiMortgage's promise to modify her mortgage if she made the TPP payments by making the payments, mailing CitiMortgage the Final Modification

Agreement, and continuing to comply with the program rules.

89. CitiMortgage, through its agent Margaret Allen, promised Ms. Owens that even if she mailed in the executed Final Loan Modification Agreement late, they would modify the mortgage.

90. CitiMortgage's promise was intended to induce Ms. Owens to rely upon it, to mail in the mortgage documents even though the July 13th response date had passed, and to forego other possible courses of action.

91. Ms. Owens reasonably and foreseeably relied on CitiMortgage's promises to her detriment.

92. If Ms. Allen had told Ms. Owens that the late tender was invalid Ms. Owens could have asked for the documents to be re-sent or even accepted the subsequent trial period plan from September 2016. She was therefore harmed by Ms. Allen's representation because CitiMortgage did not finalize the loan modification and has filed a foreclosure suit.

93. The monetary damages that Ms. Owens will suffer if specific performance is not ordered exceed $100,000.

94. The appropriate remedy is for the Court to order CitiMortgage or Nationstar to permanently modify her mortgage retroactive to 2016 in accordance with HAMP guidelines.

WHEREFORE, plaintiff prays that the Court enter judgment in her favor:

   A. On Count II, requiring defendants CitiMortgage and Nationstar to permanently modify her mortgage in accordance with the Final Modification agreement or HAMP guidelines whichever is more favorable to Ms. Owens;

   B. For the retroactive and prospective difference between the cost to her of paying a mortgage as modified according to HAMP guidelines (approximately $1301.19) and the payments required under an unmodified mortgage (approximately

$1561.45 to $1599.04)

C. In the alternative, award her damages of not less than $100,000;

D. For the decrease in the equity of the her interest in the property;

E. For the damages to her credit rating; and

F. Granting such other, further and different relief as may be just and proper.

### Count III: Violations of the Illinois Consumer Fraud Act

95. Plaintiff repeats and re-alleges paragraphs 1-94 above as if fully set forth herein.

96. This count is pled against CitiMortgage and Nationstar.

97. Defendants, CitiMortgage's and Nationstar's loan servicing is a business that is subject to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("Consumer Fraud Act").

98. Defendant, CitiMortgage, unconditionally represented to Plaintiff that if she made the trial modification payments she would be given a permanent loan modification.

99. Defendant CitiMortgage, unconditionally represented to Plaintiff that if she mailed in her Final Modification document on July 27, 2016 CitiMortgage would permanently modify her mortgage.

100. These representations were false. In fact, CitiMortgage frequently refused to offer permanent loan modifications to borrowers who had successfully completed trial modifications.

101. At all times relevant to Ms. Owens' modification attempts, CitiMortgage had no policies or procedures in place to prevent its employees from failing to offer permanent loan modifications to borrowers who had successfully complete trial modifications.

102. CitiMortgage's policies and practices with respect to borrowers who had successfully completed trial modifications was that it felt free to impose new conditions before offering a permanent loan modification, or to refuse to offer a permanent loan modification for no

reason at all, at its whim.

103. CitiMortgage concealed its policy and practice of refusing to convert successful trial modifications to permanent loan modifications from plaintiff and all other borrowers who applied for loan modifications under the HAMP program.

104. CitiMortgage's actions, both as to Ms. Owens and as to the numerous other borrowers who were also cavalierly denied permanent loan modifications even though they had complied with the terms of trial modifications, were unfair and deceptive acts and practices in violation of the Consumer Fraud Act.

105. Intent to deceive is not an element of ICFA. *Wigod*, 673 F.3d at 574-75 (7th Cir. 2012).

106. CitiMortgage's unfair and deceptive acts damaged Ms. Owens in that she would be current on an affordable modified mortgage but for Defendants' conduct.

107. These unfair and deceptive acts were the result of CitiMortgage's consistent failure to take any effective measures to ensure that its employees followed HAMP rules with respect to conversion of trial modifications to permanent loan modifications when the borrower complied with the terms of the trial modification.

108. In light of CitiMortgage's blatant disregard for the rules of the HAMP program, its consistent misrepresentations to borrowers of its compliance with those rules, and it flagrant and cavalier refusal to honor the promises to convert successful trial modifications to permanent loan modifications, an award of punitive damages is appropriate in this case.

109. The Consumer Fraud Act authorizes an award of a reasonable attorney's fees to a prevailing plaintiff. 815 ILCS 505/10a(c).

110. Nationstar, as successor-in-interest to CitiMortgage, is responsible to the same extent as CitiMortage is found to be responsible ICFA violations against Ms. Owens.

WHEREFORE, plaintiff prays that the Court:

A. Enter judgment in her favor on Count III, requiring defendants CitiMortgage and Nationstar to permanently modify her mortgage in accordance with the Final Modification agreement or HAMP guidelines whichever is more favorable to her;

B. The retroactive and prospective difference between the cost to her of paying a mortgage as modified according to the lower of the Final Modification Agreement or the HAMP guidelines (approximately $1301.19) and the payments required under an unmodified mortgage (approximately $1561.45 to $1599.04)

C. In the alternative, award her damages of not less than $100,000;

D. Award her punitive damages equal to the outstanding balance of the mortgage;

E. The decrease in the equity of the her interest in the property;

F. The damages to her credit rating;

G. Her reasonable attorneys' fees and costs; and

H. grant such other, further and different relief as may be just and proper.

**Dated: November 27, 2017**

                                                   /s/ *Shelmun Dashan*
                                                   Shelmun Dashan

Shelmun Dashan
Attorney for the Plaintiff-Debtor
ARDC ID # 6312623
Legal Assistance Foundation (LAF)
120 S. LaSalle Street, Suite 900
Chicago, IL 60603
Phone: 312-229-6017